Cory R. Laird
REEP, BELL, LAIRD & JASPER, P.C.
2955 Stockyard Road
Missoula, Montana 59808
Telephone: (406) 541-4100
Facsimile: (406) 541-4101
Email: laird@westernmontanalaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RACHEL E. WEBSTER, a married woman, | ) Case No. <br> ) <br> ) |
| Plaintiff, | ) **COMPLAINT AND DEMAND FOR** <br> ) **JURY TRIAL** |
| vs. | ) <br> ) |
| PSYCHIATRIC MEDICAL CARE, LLC, doing business as SENIOR LIFE SOLUTIONS, a Tennessee limited liability company, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) |

The Plaintiff for cause and action and complaint against the Defendant, alleges as follows:

## I.   PARTIES

1.   Plaintiff Rachel E. Webster ("Webster"), a married woman, is now and was at all times materially hereto a resident of Boundary County, state of

Idaho.

2. Defendant PSYCHIATRIC MEDICAL CARE, LLC, doing business as SENIOR LIFE SOLUTIONS ("PMC"), a Tennessee limited liability company, is now and was at all times materially hereto, authorized to do business and transacting its business in the city of Libby, county of Lincoln, state of Montana.

## II. JURISDICTION & VENUE

3. This action is pursuant to the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, et seq.; 42 U.S.C. § 1981a, et seq.; the Fair Credit Reporting Act ("FCRA").

4. Jurisdiction over the ADA claims herein is invoked pursuant to 28 U.S.C. § 1331; 42 U.S.C. § 12117(a).

5. Jurisdiction over the FCRA claims herein is invoked pursuant to 15 U.S.C. § 1681p.

6. PMC is subject to the ADA because it has more than fifteen (15) employees. The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to Webster on July 26, 2017, which was received by Webster's counsel on July 26, 2017.

7. Punitive damages are sought pursuant to 42 U.S.C. § 12117(a); 42 U.S.C. § 1981a; and 15 U.S.C. § 1681n(a).

8. Costs and attorneys' fees may be awarded pursuant to 42 U.S.C. §

12205; 15 U.S.C. § 1681n(a); and 15 U.S.C. § 1681o(b).

9. Venue is proper in this Court pursuant to 42 U.S.C. § 12117(a) and 28 U.S.C. § 1391(b) because of the fact that the unlawful discriminatory employment practices that are the subject of this action occurred in the District of Montana. In addition, venue is proper because Webster would have continued to work in the District of Montana but for the unlawful discriminatory employment practices that are the subject of this action.

### III. FACTS

10. Webster has a history and record of Multiple Sclerosis ("MS"), an unpredictable disabling disease of the central nervous system (brain and spinal cord), which attacks the protective sheath (myelin) covering the nerve fibers and causes communication problems between the brain and the rest of the body.

11. On December 22, 2015, Webster filed a Charge of Discrimination with the EEOC against her former employer Boundary Regional Community Health Center, Inc., doing business as Kaniksu Health Services ("KHS"), for violations of the Americans with Disability Act.

12. On December 30, 2015, the EEOC issued to Webster a Right to Sue Letter.

13. On February 10, 2016, Webster filed a lawsuit in the United States District Court for the District of Idaho against KHS for violations of the ADA

related to her employment and termination from KHS. Webster's lawsuit against KHS later settled and it was dismissed by the court with prejudice on December 28, 2016.

14. In December 2016, Webster started the application process with PMC's recruiter for a job as a Program Therapist for PMC's program under its contract with the Cabinet Peaks Medical Center ("CPMC") in Libby, Montana overseeing all therapeutic services for geriatric outpatients. PMC was hiring employees to start up its program at CPMC in Libby, Montana.

15. On or about January 18, 2017, Webster had a telephonic job interview with a PMC manager. Later, Webster had other phone interviews with other members of the PMC leadership team.

16. On or about March 14, 2017, Webster had a face-to-face job interview with CPMC administrators. During the job interview process with PMC and CPMC, Webster disclosed she was not, at that time, licensed by the state of Montana as a clinical social worker. Webster indicated to PMC managers she would apply for licensure in Montana if PMC offered Webster the PMC Program Therapist job at CPMC in Libby, Montana.

17. On or about April 4, 2017, PMC formally offered to Webster in writing an offer of employment as a Program Therapist at CPMC in Libby, Montana.

18. On or about April 24, 2017, Webster completed and signed an Applicant Disclosure and Consent for Background Investigation form allowing PMC to conduct an investigation of her background by obtaining a consumer report from a Consumer Reporting Agency of PMC's choice, pursuant to the FCRA.

19. On or about May 18, 2017, Webster started the application process for licensure by the State of Montana as a clinical social worker, and Webster kept PMC updated on the status of her application for licensure.

20. On or about June 5, 2017, Webster started working for PMC at the CPMC in Libby, Montana.

21. During the workweek of June 5-9, 2017, Weber's duties included completing her immunizations, basic lifesaving certification, and hospital orientation at CPMC.

22. During the workweek of June 12-16, 2017, Webster attended formal training at PMC's offices in Missouri, during which PMC trained Webster and other newly hired "teammates" from CPMC in Libby, Montana, PMC's standard operation procedures, how to fill out treatment plans, and other PMC business forms.

23. Webster's newly hired teammates from CPMC in Libby, Montana were Registered Nurse Kim Bourgh, and Administrative Assistant Terri Granger.

24. During training, no one at PMC indicated to Webster any concerns that Webster was having difficulty learning the material or that Webster did not have the skills or abilities to perform her job duties at PMC as a Program Therapist.

25. During training in Missouri, Webster mentioned to Kim Bourgh, RN, that she has trigeminal neuralgia, a chronic condition that causes facial pain, and that she takes medications, including Ritalin, to treat her symptoms.

26. After PMC training concluded on June 16, 2017, Webster and her teammates from CPMC had to make a close connecting flight to travel back to Libby, Montana. While trying to make their connecting flight, Webster fell behind her teammates as they rushed through the airport. Webster could not keep up with her teammates' fast pace. Webster walks with a slight limp to her right leg. Terri Granger asked Webster, "Are you okay?" Webster answered, "Yes, I have a chronic condition, and this is what I do to deal with it."

27. On or about Monday, June 19, 2017, Webster and her teammates met with the PMC Regional Director Melissa Martin for a presentation at CPMC in Libby, Montana regarding how to complete patient home assessments.

28. Again, no one mentioned to Webster any concerns that Webster was having difficulty learning the material or that Webster did not have the skills or abilities to perform her job duties with PMC as a Program Therapist.

29. On Wednesday, June 21, 2017, while sitting in her work office at CPMC, Webster received a phone call from PMC Human Resources Director Jan Hallmark. Ms. Hallmark conferenced PMC Vice President of Operations Lynsey Perry into the phone call. With Ms. Perry on the phone conference, Ms. Hallmark told Webster that PMC was terminating Webster's employment effective immediately because Webster did not have licensure from the state of Montana, and Webster did not have the skills or work style to match PMC's program.

30. On Friday, June 23, 2017, Webster received an email from the Montana Business Standards Division Board of Behavioral Health attaching a copy of her Clinical Social Worker License. On that same day Webster forwarded the email from the Montana Business Standards Division to Ms. Hallmark attaching a copy of Webster's Montana license with the message, "I ask that you please reconsider PMC's decision to terminate my employment." Later that same day, Ms. Hallmark sent a reply email to Webster, "I appreciate you letting me know your Montana license came. But in the call you and I had, the bigger issue really is our work environment. The way our program is designed to work does not match your skills and style."

31. Webster performed no patient visits or patient assessments during her entire two-week employment at PMC. The only duties PMC assigned Webster during her employment were orientation, training, and administrative duties while

Webster and her teammates prepared to start up PMC's program at CPMC in Libby, Montana.

32. Before and after terminating Webster's employment, PMC did not provide Webster with: a letter advising Webster of PMC's decision to terminate Webster; a copy of Webster's background/consumer report; the name and telephone number of the consumer reporting agency; or letter describing her rights prescribed by the FCRA.

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Disability Discrimination/Discharge Because Regarded as Disabled**
**(42 U.S.C. § 12101, et seq.; and 42 U.S.C. § 1981a, et seq.)**

33. Webster restates and re-alleges by reference Paragraphs 1 through 32 as if fully set forth herein.

34. Webster is an individual who has a physical impairment that substantially limits one or more major life activities of Webster.

35. Webster is an individual with a record of physical impairments that substantially limit one or more major life activities.

36. Defendant PMC regarded Webster as having a physical impairment which limits a major life activity of Webster.

37. Webster is qualified to perform the essential functions of a therapist and counselor with or without reasonable accommodations by PMC.

38. PMC intentionally discriminated in violation of the ADA (42 U.S.C. § 12101, et seq.) against Webster by discharging her because PMC regarded Webster as disabled based on Webster's background/consumer report which showed Webster had filed suit against her former employer for ADA violations, and based on reports PMC received from Webster's teammates that Webster had a chronic medical condition.

39. PMC actions were knowing, intentional, and/or in reckless disregard of Webster's civil rights in violation of the ADA (42 U.S.C. § 12101, et seq.; and 42 U.S.C. § 1981a).

40. As a direct and proximate result of PMC's unlawful conduct, Webster has suffered economic damages, and non-economic damages in the form of severe emotional distress, embarrassment, humiliation, and mental anguish in an amount to be proven at trial, pursuant to 42 U.S.C. § 12117, reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 12205, and punitive damages pursuant to 42 U.S.C. § 1981a.

**SECOND CAUSE OF ACTION**
**Retaliation**
**(42 U.S.C. § 12101, et seq.; and 42 U.S.C. § 1981a, et seq.)**

41. Webster restates and re-alleges by reference Paragraphs 1 through 40 as if fully set forth herein.

42. PMC intentionally retaliated against Webster by discharging her

because she filed an ADA charge and filed suit against her former employer for ADA violations of failure to accommodate her disability and discharge due to disability.

43. PMC's actions were knowing, intentional, and/or in reckless disregard of Webster's civil rights in violation of the ADA (42 U.S.C. § 12101, et seq.; and 42 U.S.C. § 1981a).

44. As a direct and proximate result of PMC's unlawful conduct, Webster has suffered economic damages, and non-economic damages in the form of severe emotional distress, embarrassment, humiliation, and mental anguish in an amount to be proven at trial, pursuant to 42 U.S.C. § 12117, reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 12205, and punitive damages pursuant to 42 U.S.C. § 1981a.

**THIRD CAUSE OF ACTION**
**Violations of the FCRA**
**(15 U.S.C. §§ 1681, 1681a-1681t)**

45. Webster restates and re-alleges by reference Paragraphs 1 through 44 as if fully set forth herein.

46. PMC negligently or willfully violated the FCRA by terminating Webster's employment based on her background/consumer report without advising Webster that PMC's decision to terminate her employment was based in whole or in part upon the information contained in her background/consumer report in

violation of 15 U.S.C. § 1681m.

47. PMC negligently or willfully violated the FCRA by not providing to Webster the name, address, and telephone number of the consumer reporting agency that furnished the report on Webster to PMC in violation of 15 U.S.C. § 1681m.

48. PMC negligently or willfully violated the FCRA by not providing to Webster notice of Webster's right to obtain a free copy of her background/consumer report from the reporting agency who prepared her background/consumer report and of her right to dispute the consumer reporting agency's accuracy or completeness of any information in her background/consumer report in violation of 15 U.S.C. § 1681m.

49. As a direct and proximate result of PMC's unlawful conduct, Webster has suffered actual economic damages, and actual non-economic damages in the form of severe emotional distress, embarrassment, humiliation, and mental anguish in an amount to be proven at trial, reasonable attorneys' fees, expert fees, and costs pursuant to 15 U.S.C. § 1681o, 15 U.S.C. § 1681n, together with punitive damages pursuant to 15 U.S.C. § 1681n(a).

### V.    **JURY DEMAND**

50. Webster by this Complaint and pursuant to FRCP 38, hereby requests this matter to be heard by a jury.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** having made this Complaint and the allegations against the Defendant, Plaintiff prays for relief as follows:

1. For judgment against the Defendant for special damages of lost wages, salary, benefits, other compensation, monetary losses, and out of pocket expenses, including medical expenses in an amount to be proven at trial;

2. For judgment against the Defendant for general damages, for emotional distress, mental anguish, embarrassment, and humiliation in an amount to be proven at trial;

3. For Plaintiff's costs and expenses incurred herein;

4. For reasonable attorneys' fees pursuant to 42 U.S.C. § 12205; 15 U.S.C. § 1681o(b); and 15 U.S.C. § 1681n(a).

5. For punitive damages pursuant to 42 U.S.C. § 1981a; and 15 U.S.C. § 1681n(a);

6. For front pay and benefits for a reasonable period of time;

7. For prejudgment interest as provided by law; and

8. For such other and future relief as the Court may deem just and proper.

\\\

\\\

DATED this 28th day of August, 2017.

          REEP, BELL, LAIRD & JASPER, P.C.


          /s/    Cory R. Laird
              Attorneys for Plaintiff