**FILED**

MAY 30 2019

Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| RACHEL E. WEBSTER, a married woman,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>PSYCHIATRIC MEDICAL CARE, LLC, doing business as SENIOR LIFE SOLUTIONS, a Tennessee limited liability company,<br><br>　　　　　　Defendant. | CV 17–116–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiff Rachel E. Webster's Motion for Sanctions.

(Doc. 37.)   A hearing was held on the motion on April 26, 2019.   The Court now

grants the motion in substantial part, but it denies the form of relief requested.

Webster is entitled to: (1) an adverse inference instruction; (2) the opportunity to

conduct additional discovery; and (3) her costs and fees associated with bringing

the motion and with correcting the prejudice she has suffered.

## BACKGROUND

Webster initiated suit in this matter on August 28, 2017, alleging that she

was unlawfully terminated from her employment with Defendant Psychiatric

-1-

Medical Care, LLC ("PMC"). On January 3, 2019, the Court granted Webster's motion to file an amended complaint adding Defendant Cabinet Peaks Medical Center ("Cabinet Peaks"), a medical facility located in Libby, Montana, which contracted with PMC to provide services at Cabinet Peaks. Trial is set for October 15, 2019.

Webster's claims arise from the termination of her employment with PMC. Webster began working for PMC as a Program Therapist on June 5, 2017, with an annual salary of $65,000. (Doc. 13 at 2.) Along with two other new hires, Webster traveled to Missouri for training the following week. (*Id.*) On June 21, 2017, PMC terminated Webster's employment. (*Id.* at 3.)

Webster suffers from multiple sclerosis and trigeminal neuralgia, and she alleges that her firing was related to her disability, in violation of the Americans with Disabilities Act ("ADA"). (*See* Doc. 40.) PMC theorizes that Webster was terminated due to performance issues. However, key evidence—Webster's personnel file, including her training evaluation—was destroyed within days of Webster's termination. Further, PMC did not timely inform Webster of the destruction of the file.

Webster requests sanctions because PMC:

(1) destroyed Webster's training records;

(2) withheld an email referencing the destruction of the records until the day

-2-

before discovery closed;

(3) withheld the templates used to assess Webster's performance in training until after the close of discovery;

(4) failed to produce other documents regarding Webster's performance, "including an email that disproves one of PMC's claimed reasons for terminating Ms. Webster";

(5) failed to disclose witnesses known to PMC to have discoverable information; and

(6) failed to produce a copy of its insurance policy for ten months and failed, until the hearing on this matter,[1] to produce an unredacted copy including the relevant policy limits.

(Doc. 38 at 7.)

## LEGAL STANDARD

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or

---

[1] At the hearing, counsel for PMC stated it would correct its error in failing to produce an unredacted copy of the policy. (The copy that the Court has seen is 100% redacted, such that no words are readable. (Doc. 38-7 at 8–25.)) The Court assumes that PMC has followed through on its counsel's representation.

permit discovery.'"  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006)

(quoting *Fjelstad v. Am. Honda Motor, Co.*, 762 F.2d 1334, 1339 (9th Cir. 1985)).

Regardless of the source of authority relied upon, the district court has broad

discretion to fashion appropriate sanctions.  *Id.*

Whether the court's authority derives from Rule 37 or from its inherent

authority, the court should consider five factors "[b]efore imposing the harsh

sanction of dismissal":

(1) the public's interest in expeditious resolution of litigation;

(2) the court's need to manage its dockets;

(3) the risk of prejudice to the party seeking sanctions;

(4) the public policy favoring disposition of cases on their merits; and

(5) the availability of less drastic sanctions.

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)

(quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).

Additionally, "[a] finding of 'willfulness, fault, or bad faith' is required for

dismissal to be proper."  *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch*, 69 F.3d

at 348).

## ANALYSIS

Webster's claims may be divided between two legal categories.  First, she

alleges spoliation, which is sanctionable under the Court's inherent authority.  *See*

*Leon*, 464 F.3d at 958 & n.4. Second, she contends that PMC failed to timely produce—or, in some instances, to produce at any time—discoverable and responsive information and evidence, which is sanctionable under Rule 37.

## I. Spoliation

As the Northern District of California has noted, courts generally look for three elements to determine if sanctionable spoliation has occurred: (1) a duty to preserve the evidence at the time of destruction; (2) culpability for the destruction; and (3) relevance of the destroyed evidence to a claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." *Rockman Co. (USA) v. Nong Shim Co.*, 229 F. Supp. 3d 1109, 1122–23 (N.D. Cal. 2017) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012)). Because Webster alleges not only spoliation but also violations sanctionable under Rule 37, the Court will address the second and third elements in its analysis of PMC's discovery-related conduct as a whole. *See infra* p. 16–22.

Webster relies on 29 C.F.R. § 1602.14, promulgated in part under the ADA, to establish the existence of a duty at the time Webster's training documents were shredded. Section 1602.14 provides that "[i]n the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination."

"The affirmative obligation imposed by [an earlier version of § 1602.14] to

-5-

preserve records was clearly designed to protect . . . plaintiffs from an employer's destruction of possibly damaging evidence." *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1195 (4th Cir. 1981). As the Fourth Circuit has noted, considering a cause of action brought under Title VII—under which § 1602.14 was also promulgated— even where the regulation does not create an affirmative obligation to preserve records,

> [e]mployers have been on notice since the earliest days of Title VII's enforcement of the critical importance of the maintenance of employment records going back at least to the effective date of the Title. In consequence, holding [an] employer to the normal litigation consequences of a failure to maintain relevant employment records imposes no higher standard than that dictated by sound business judgment in respect of the maintenance of all business records having potential relevance in any of the litigation patterns to which businesses stand constantly exposed.

*Id.* at 1195–96.

PMC does not dispute the applicability of this regulation. Instead, it argues that any violation of any duty created by § 1602.14 does not necessarily translate to sanctions. PMC contends that the touchstone of the inquiry is foreseeability and that litigation was not foreseeable at the time that the records were shredded. However, accepting PMC's proposed analysis, the Court finds that PMC was not justified in shredding Webster's file.

Regardless of the precise legal framework, PMC had a duty to retain Webster's employment documents. Even in the absence of § 1602.14, PMC

-6-

would nonetheless be required to preserve and produce evidence. "[T]here is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced." *Apple Inc.*, 888 F. Supp. 2d at 989. PMC had a duty to preserve the evidence if this litigation was reasonable foreseeable. *See Rockman*, 229 F. Supp. 3d at 1122. "Although the Ninth Circuit has not precisely defined when the duty to preserve is triggered, trial courts in this Circuit generally agree that, '[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'" *Apple Inc.*, 888 F. Supp. 2d at 990–91 (quoting *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)).

Here, litigation was foreseeable at the time of Webster's discharge. At the hearing on the motion, PMC argued that the circumstances of Webster's termination did not put PMC on notice of a possible lawsuit. Setting aside the issue of whether PMC was aware of Webster's medical diagnoses at the time of discharge—a factual issue likely to be significant in the resolution of this case on its merits—a sophisticated entity like PMC should always recognize the possibility of a lawsuit when it terminates the employment of a professional. Further, Webster did not delay in putting PMC on notice of her claims; she sent a litigation-hold letter to PMC only five days after her termination. By that time, her training documents had already been destroyed. An employee should not shoulder the

-7-

blame for a corporate employers' unwillingness to maintain records for a reasonable period of time after firing the employee.    PMC had a duty to preserve Webster's employment documents, and it may fairly be held accountable for its failure to do so.

## II.    PMC's Failure to Disclose and Respond to Discovery Requests

Apart from the destruction of Webster's personnel documents, Webster argues that PMC had a duty to supplement its initial disclosures and discovery responses.    Relevant here is PMC's conduct in: (1) failing to timely produce an email referencing the shredding of Webster's personnel file; (2) failing to timely produce the templates used to assess Webster's training performance; (3) failing to produce other documents regarding Webster's job performance; (4) failing to disclose witnesses known to PMC to have discoverable information; and (5) failing to produce an unredacted copy of the relevant insurance policy.

### A. The Perry/McGhee Email

The day after Webster was fired, Lynsey Perry, PMC's vice president of operations, wrote an email to Justin McGhee, the regional manager overseeing Webster's employment.    (Doc. 38-1.)    That email was produced the day before discovery closed, and it is the only document that Webster has received discussing the destruction of her personnel file.    McGhee had previously emailed Perry, asking, "Does the team need to hold on to any of Rachel's orientation paperwork?

-8-

I wasn't sure if Jan needs any of it or if they can shred it." In the email that was ultimately produced, Perry replied, "It can be shredded." (*Id.*)

It is unclear when exactly this email should have been produced, but there appears to be no dispute that it is responsive to Webster's discovery requests. In the absence of any argument regarding when the email should have been produced, the Court cannot determine that PMC failed to fulfill its discovery obligations by not producing the email until one day before the close of discovery, although this conduct is problematic on its face. Nevertheless, the Court will consider this email in its analysis of PMC's culpability and the prejudice suffered by Webster. *See infra* p. 16–22.

## B. Training Templates

After discovery closed, PMC produced templates of the training documents that were used to assess Webster's performance. (Docs. 38-2, 38-3, 38-4.) As with the Perry/McGhee email discussed immediately above, Webster does not seem to argue that the failure to timely produce is independently sanctionable. Thus, the Court considers the untimely disclosure of the training documents in fashioning an appropriate remedy for PMC's destruction and nondisclosure of other evidence.

## C. Other Responsive Documents

Webster contends that PMC still has not met its discovery obligations,

arguing that additional responsive documents remain within PMC's control. To demonstrate her point, Webster identifies two documents she has within her possession that should have been produced by PMC but were not. The Court is concerned that PMC has not fulfilled its discovery obligations, but it cannot determine that its failure to produce documents has caused prejudice and is sanctionable in and of itself. Thus, the Court construes Webster's motion in part as a motion to compel. The Court will order PMC to do what PMC should have done from the beginning—search for and produce all documents within its control with any potential relevance to this case.

First, Webster points to an email chain between Kimberly Bourg, Webster's supervisor, and Ahyoung Huff, an administrator at Cabinet Peaks, about the possibility of providing dictation services for Webster. (Doc. 38-16.) Webster ultimately received this document in response to a subpoena directed to Cabinet Peaks. She anticipates using the email to prove that PMC was on notice of and failed to accommodate her disability.

Second, Webster argues that PMC wrongfully failed to produce an email from PMC's head trainer to Webster and her fellow incoming employees. (Doc. 38-5.) This email suggests that trainees are expected to feel overwhelmed by the information they receive in training, arguably refuting PMC's claim that it terminated Webster because she expressed concern about her ability to retain the

-10-

information given in training.

Webster has received these emails from other sources, and it does not appear that she has been prejudiced by PMC's nonproduction of these particular documents. However, the Court is unsure whether PMC has met its discovery obligations. Notably, the lead trainer testified during her deposition that she was never asked to preserve or search for emails and other documents relating to Webster. (Doc. 38-13 at 3.) Plainly, Webster is entitled to all responsive and discoverable documents, and the Court is unconvinced that she has received them to date. Thus, as discussed below, PMC must search for and produce all responsive documents in its possession or over which it may exercise control within 30 days of this order, or it will be sanctioned.[2]

## D. Witnesses

Webster argues that PMC failed to timely disclose the names and contact information of employees with discoverable information about Webster's

---

[2] Although it is outside the scope of the parties' arguments on the motion for sanctions, in the interest of avoiding further discovery motions, the Court notes that it has seen at least one Request for Production to which these documents would be responsive. (Doc. 55-1 at 7–8.) Rather than producing any documents, it appears that PMC issued a laundry list of objections to production, followed by a note that it "is not aware of responsive documents it is withholding based on its objections, other than based on attorney client privilege/work product." (*Id.* at 8.) However, the Court should not need to tell a litigant—particularly a well-represented business entity such as PMC—that the onus of production falls on its shoulders. PMC has not attempted to locate responsive documents, and it cannot reasonably argue that production is overly burdensome given its complete failure to search for such documents. As a result of PMC's failure to adhere to the rules of discovery, it has waived its right to raise applicable objections to Webster's discovery requests.

-11-

termination.    On the last day of discovery, PMC supplemented its initial disclosures with the names of five employees previously undisclosed, with vague descriptions of the information that they may possess.    PMC has never disclosed the names of its Chief Financial Officer, Bobby Rouse, and Chief Executive Officer, J.R. Greene, both of whom discussed Webster's termination with Vice President Perry.    PMC contends that it had no obligation to disclose these witnesses earlier, or—in the case of Rouse and Greene—to disclose them at all.

Even in the absence of a discovery request, litigants must provide, within 14 days of the preliminary pretrial conference, "the name . . . of each individual likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."    Fed. R. Civ. P. 26(a)(1)(A)(i), (C).    If the initial disclosures later prove to be incomplete, the litigant "must supplement or correct its disclosure . . . in a timely manner" unless "the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing."    Fed. R. Civ. P. 26(e)(1)(A); *but see* 2000 Committee Advisory Note to Rule 26 ("Lawyers must be careful to recognize that informal disclosure during the discovery process will rarely satisfy Rule 26(a)(1).").

Rule 26(a)(1) extends only to evidence "that the party may use to *support* its

-12-

claims or defenses." 2000 Committee Advisory Note to Rule 26.[3] It "relieve[s]

parties of the duty to disclose the names of all persons with relevant and

discoverable information or all relevant documents, including harmful witnesses or

'smoking gun' documents that the party does not intend to use." *Id.* Generally,

the fix for a litigant's failure to comply with Rule 26(a) is exclusion; where a party

fails to meet its obligations under Rule 26(a), "the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial,

unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c)(1).

PMC has the better argument regarding the scope of 26(a)(1) initial

disclosures. It was not obligated to disclose every witness with discoverable

information pursuant to Rule 26(a)(1)(A)(i), and it is unclear whether PMC

determined it may use the witnesses prior to the date of its supplemental

disclosure. Although the summaries of information known to each witness were

less than complete, this problem can and should be easily remedied. The Court

will order PMC to supplement its disclosures with a fuller description of the

---

[3] PMC filed a motion to supplement its response to the motion for sanctions, stating that it "inadvertently did not cite to the 2000 Committee Advisory Notes," which provide that a witness must be disclosed only if the disclosing party intends to use that witness. (Doc. 58.) The Court denies that motion as moot; further, it does not see an initial failure to cite beneficial law as good cause for amendment. However, because the Court is obligated to apply the correct legal standard, it will consider the Advisory Noes.

"subjects of . . . information" known to the witnesses previously disclosed.    Fed. R. Civ. P. 26(a)(1)(A)(i).

The larger problem with PMC's supplemental disclosures is their lack of timeliness.    By failing to supplement prior to the day before discovery closed, PMC effectively barred Webster from developing the facts regarding these potential witnesses.    Further, given PMC's other discovery violations and its general pattern of untimely responses, Webster struggled—and, in some instances, was unable—to receive the information she needed from other sources.    PMC's broader pattern of non-disclosure renders its failure to timely supplement its Rule 26 initial disclosure far more damaging than it likely would have otherwise been.

Because the witnesses may ultimately aid Webster as much or more than PMC and because their exclusion would not assist in finding a fair and accurate resolution of this case on the merits, the Court finds that exclusion under Rule 37(c)(1) is not an appropriate remedy under the circumstances.    Rather, as outlined below following the analysis of culpability and prejudice, the Court will grant to Webster the opportunity to cure any prejudice caused by PMC's failure to meet its discovery obligations in a timely manner.

### E. Insurance Policy

Finally, Webster argues that PMC failed to produce its insurance policy. Within 14 days of the preliminary pretrial conference, a litigant must produce "for

inspection and copying . . . , any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for proceedings made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv). It is uncontroverted that—despite the clarity of Rule 26(a)(1)(A)(iv)—PMC failed to disclose the existence of its policy in a timely fashion and to disclose the liability limits in any manner prior to the hearing on the motion to suppress. *See supra* p. 11 n.2. PMC unquestionably failed to fulfill its discovery obligations as to this issue. The Court finds that the award of fees and costs to Webster appropriately remedies this failure.

### III. Remedy

"Before imposing the 'harsh sanction' of dismissal, . . . the district court should consider the following factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch*, 69 F.3d at 348)). Further, "a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper.'" *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 348). Because culpability is a threshold consideration, the Court begins with addressing PMC's intent in destroying and failing to produce evidence.

-15-

## A. Culpability

The degree to which PMC acted in bad faith is relevant to determining the appropriate remedy, whether sanctions are imposed under the Court's inherent authority or under Rule 37.  *Leon*, 464 F.3d at 958.   Here, the Court stops just short of finding that PMC generally acted in bad faith.   Certainly, PMC is not innocent; all litigants must produce discoverable information freely, and PMC is a sophisticated business entity that can and likely does understand its discovery obligations.   Thus, it is fair to hold PMC accountable for its discovery conduct, but it would be a step too far, under the circumstances, to issue a sanction in the form of a default judgment in favor of Webster.

In regard to spoliation, which is the most serious issue raised in Webster's motion, the Court finds that PMC did not destroy Webster's file with the level of culpability necessary to warrant the "harsh sanction" of default judgment. *Anheuser-Busch*, 69 F.3d at 348.   Given PMC's broad pattern of nondisclosure, it appears that PMC has not discharged its basic discovery obligations with the diligence and fairness expected by the Court and required by the Federal Rules of Civil Procedure.   That said, after examining the evidence and conducting a hearing on the motion, the Court finds that Webster's file was shredded primarily out of carelessness rather than bad faith.

"A party's destruction of evidence qualifies as willful spoliation if the party

-16-

has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). As discussed above, PMC *should* have anticipated litigation when it terminated Webster's employment, and it had a legal duty to preserve her training documents. *See supra* p. 5–8. But the Court does not find that PMC recognized that legal duty and shredded the documents to avoid the consequences of those documents. Litigation had not been commenced, and Webster was terminated mere weeks after she started work, while she was still in training. PMC acted unreasonably and imprudently, but it did not act in bad faith.

The Court finds, too, that PMC's general pattern of nonresponsiveness throughout the discovery period primarily arose from its failure to give this case the attention it deserved. Because PMC ignored or underestimated the merits of Webster's case, it failed to timely recognize and disclose witnesses and documents relevant to this litigation. This does not render PMC's conduct excusable, but it does not rise to the level of bad faith.

In one regard, however, the Court finds that PMC acted willfully and dishonestly. Webster's First Request for Production was for "a complete copy of all files maintained by PMC regarding [Webster] before, during, and after her employment at PMC." (Doc. 55-1 at 5.) PMC responded that it was "not aware

-17-

of responsive documents it is withholding based on its objections, other than based on attorney client privilege/work product." (Doc. 55-1 at 6.) As discussed at the hearing on the motion, PMC was, in fact, aware that responsive documents had existed and were being withheld because they had been destroyed. PMC was willfully dishonest and appears to have been attempting to cover up its spoliation.

PMC's behavior is not acceptable; indeed, in at least one regard, it arguably constitutes bad faith. However, as discussed below, the Court can fashion an appropriate remedy short of the extreme sanction of default judgment.

## B. Prejudice

Webster argues that she has been irreversibly prejudiced by PMC's conduct throughout the discovery process such that a default judgment in her favor is the only appropriate sanction. The Court agrees that Webster has suffered prejudice, but it disagrees that judgment in her favor is necessary.

Regarding the destroyed training documents, PMC contends that Webster has not suffered prejudice because PMC never claimed to have fired her because of lack of competence or inability to successfully complete training. (Doc. 46 at 5.) Rather, PMC posits that Webster's termination was due to her failure to obtain the requisite state license and a vague sense that "PMC's environment may not be the best match for [Webster's] skills and work style." (Doc. 46 at 6.) PMC's position is overly simplistic, if not disingenuous. Certainly, documents showing

-18-

that Webster performed well at training would tend to disprove that PMC terminated Webster for a legitimate reason.    Given that Webster is attempting to show that she was fired because of a protected disability, her ability to do the tasks assigned to her is powerful evidence in her favor.

"[B]ecause 'the relevance of destroyed documents cannot be clearly ascertained [when] the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the destroyed documents.'"    *Leon*, 464 F.3d at 959 (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982) (alterations omitted)).    Webster did not know of either the training documents or their destruction prior to taking depositions, and accordingly she did not have the opportunity to explore the significance of the evidence to the case. PMC cannot, particularly after engaging in an obstructionist pattern of discovery, ask Webster to simply trust in its interpretation of evidence when Webster has not been freely able to develop her own theories.    Webster has suffered prejudice, both by the destruction of the evidence (which by all accounts favors her legal theories) and by the nondisclosure of the evidence.    However, as discussed below, it is not too late to remedy that prejudice and to reach a decision on the merits.

Similarly, Webster has been prejudiced by PMC's refusal to search for and share information throughout the discovery process.    This failure translated to an inability to seek other discoverable information, both through discovery requests

-19-

and depositions. Simply put, Webster does not know as much as PMC knows regarding her termination, and the imbalance of knowledge can only be attributed to PMC. Again, though, the Court finds that time and money are sufficient remedies.

## C. Equitable and Policy Interests

Prior to ordering the sanction of a default judgment, the Court is also instructed to consider "the public's interest in expeditious resolution of litigation"; "the court's need to manage its dockets"; and "the public policy favoring disposition of cases on their merits." *Leon*, 464 F.3d at 958. To avoid redundancy, the Court does not analyze these factors—all of which counsel against a default judgment—individually. Essentially, each consideration asks the Court to balance efficiency against resolution on the merits.

The Court previously granted Webster's motion to amend her complaint to bring in an additional defendant. Trial has been reset for October 2019, giving the parties a substantial amount of time to conduct further discovery. The Court can give Webster the ability to correct the prejudice she has suffered without further continuing trial and its associated deadlines. Further, the Court is unconvinced that Webster will not be able to receive all of the discovery—aside from the destroyed training documents—to which she is entitled. And the jury will receive an adverse inference instruction directed to the spoliated documents.

-20-

With lesser remedies in place, the Court finds that a jury will be able to reach a fair determination of this case on its merits.

### D. Availability of Lesser Sanctions

The Court considers the appropriate sanction pursuant to both its inherent authority and Rule 37.    There is no absolute limit to the sanctions available to the court, but Rule 37 sets forth a non-exhaustive list of potential remedies, including: excluding evidence, issuing an adverse inference instruction, instructing the jury of a party's misconduct, preventing a party from presenting a particular claim or defense, awarding partial dismissal, entering default judgment, and awarding reasonable fees.    Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi), (c)(1).

Here, a resolution on the merits remains possible.    And, although misconduct has occurred, the need to punish PMC is not so great that default judgment is warranted.    The Court will order sanctions directed to placing Webster in the position she would have been in if no evidence had been destroyed and all discoverable evidence had been timely produced.

Of course, because the Court and Webster have not seen the training documents, it is unclear precisely what position Webster would be in had those documents been preserved and produced.    Though imperfect, the Court finds that the best remedy is to issue an adverse inference instruction to the jury, authorizing the jury to infer that the destroyed documents showed that Webster's performance

-21-

had been satisfactory prior to her termination. Webster also may use the destruction of the documents as evidence suggesting her termination was pretextual. Further, Webster will be able to depose previously deposed witnesses to address the limited issues raised by the destruction of the templates, with PMC paying Webster's reasonable expenses.

Additionally, the Court will order PMC to do what it should have done when it first received Webster's discovery requests—search for and produce all responsive documents. PMC will have 30 days to complete this task. PMC bears the burden of finding all relevant documents, and, because PMC has failed to properly engage in the discovery process, the Court is unconcerned about the time pressure PMC will face and any expense PMC will incur in meeting its discovery obligations. PMC must also, within 14 days of this Order, adequately supplement its initial disclosures. PMC's failure to comply with this Order will result in further sanctions, which may include default judgment.

Although the Court rejects Webster's proposed form of sanction, because Webster was justified in seeking relief, the Court will further order PMC to pay Webster's reasonable attorneys' fees and costs incurred in filing her motion for sanctions.

Accordingly, IT IS ORDERED that the motion (Doc. 37) is GRANTED in part and DENIED in part. The Court denies the specific relief requested but

otherwise grants the motion.

IT IS FURTHER ORDERED that:

(1) The jury will be given an adverse inference instruction at trial;

(2) Webster shall submit a statement of reasonable attorneys' fees and costs incurred in making her motion for sanctions (Doc. 37) within 7 days of this Order, and PMC will pay those expenses within 7 days of the submission of Webster's statement;

(3) PMC shall pay the reasonable attorneys' fees and costs incurred by Webster in redeposing those witnesses with knowledge of either Webster's performance during training or knowledge of Webster's training file and its destruction, and Webster shall have 60 days to conduct those depositions;

(4) PMC shall search for and produce, within thirty days of this Order, all documents in its possession or over which it may exercise control referring to Webster, whether related directly to Webster's training experience or not, except for those documents that are protected as privileged or attorney work product and which are specifically identified on a privilege log;

(5) PMC shall supplement its initial disclosures with a full description of what each witness may testify to, and Webster shall have 60 days to

-23-

depose these witnesses, with Webster to bear her own attorneys' fees and

costs; and

(6) PMC's Motion for Leave to Supplement Our Response to Plaintiff's

Motion for Sanctions (Doc. 58) is DENIED as moot.

DATED this 30th day of May, 2019.

Dana L. Christensen, Chief Judge
United States District Court